## FORBES v. CANNON et al. (No. 6693.)

(Court of Civil Appeals of Texas. San Antonio. Feb. 22, 1922.)

**1. Limitation of actions 46(10)—Suit to recover amounts assessed against defendant on charged-off obligations held governed by the 4-year statute.**

Under an agreement by seller of bank stock to pay buyers thereof the interest of the buyers as stockholders in all notes held by the bank which might, within 4 years, be charged off by the bank at the direction of the Bank Examiner, the 4-year statute of limitations (Rev. St. 1911, arts. 5688, 5690), barred an action to recover amounts due from the seller, under the agreement, on charged-off obligations, where action was not brought within 4 years after the assessment, during which time the seller refused to make payment.

**2. Limitation of actions 5(1)—Statute to be strictly construed.**

A statute of limitations must be strictly construed.

**3. Limitation of actions 28(2)—Action to recover money expended under theory of subrogation barred by 2-year statute.**

An action by joint obligors on theory of subrogation and implied promise for reimbursement to recover money they were compelled to pay is barred in 2 years.

Appeal from Jim Wells County Court; R. R. Mullen, Judge.

Suit by O. E. Cannon and others against M. A. Forbes. Judgment for plaintiffs, and defendant appeals. Reversed and rendered.

See, also, 224 S. W. 944.

A. J. Bell, of San Antonio, for·appellant.

C. C. Forry and Perkins & Floyd, all of Alice, and H. S. Bonham, of Beeville, for appellees.

·COBBS, J.　This suit was brought by appellees to recover against appellant the sum of $720 growing out of a written obligation to pay certain amounts assessed on charged-off obligations to the Alice State Bank.

On April 28, 1915, M. A. Forbes and other stockholders owned a majority of the stock of the Citizens' State Bank of Alice, Tex., and on that date contracted with O. E. Cannon to sell him and his associates 205 shares of the 350 shares of the capital stock of said bank, capitalized at $35,000, par value of each share $100. Subsequently, on the 10th day of May, 1915, there was actually sold to O. E. Cannon and others 190 shares of said stock, instead of 205 shares, and on that day they entered into a new contract, in which it was agreed:

"This contract of agreement and guaranty, made and entered into this the 10th day of May, A. D. 1915, by and between the undersigned stockholders of the Citizens' State Bank of Alice, Texas, a corporation duly organized under and by virtue of the laws of the state of Texas, as party of the first part, and O. E. Cannon, A. Wayne Wood and D. G. Wood and others, as party of the second part, witnesseth:

"Whereas, the parties of the first part and the party of the second part did on the 28th day of April, A. D. 1915, enter into a contract for the sale by the parties of the first part of so much capital stock of the Citizens' State Bank as each has this day deposited in escrow with said contract to the said parties of the second part herein, the parties of the first part herein and the parties of the second part herein have made the following additional agreements to said contract which shall be construed to be a part of the above-mentioned contract.

"(a) The parties of the first part herein hereby guarantee the 'payment within four years all bills receivable owned by the Citizens'. State Bank of Alice, Jim Wells county, Texas, at the time of the consummation of the sale and purchase of the stock contracted for sale and delivery and this day deposited in escrow in said bank by the parties of the first part, to the said Citizens' State Bank of Alice, Jim Wells county, Texas, in so far as each of the parties of first part's interest appears in said bills receivable by virtue of being the owner at present of said stock this day deposited in escrow for the purpose of delivery to said parties of the second part herein upon consummation of said contract of sale and purchase of said stock.

"(b) And the parties of the first part hereby bind and obligate themselves severally to pay to O. E. Cannon, A. Wayne Wood and D. G. Wood and others that purchase said stock this day deposited in escrow immediately their interest in all notes charged off under the direction of the State Bank Examiner or any Bank Examiner in the employ of the federal government or state government, so far as their interest is represented in said notes and bills by virtue of being the owners of said stock sold to the said parties of the second part herein.

"(c) It is agreed by and between the parties hereto that all renewals and extensions on bills and notes receivable of the Citizens' State Bank of Alice, Texas, after the parties of the second part herein receive the stock this day deposited in said bank in escrow, shall be made with the consent of either Mac Word, Jno. R. Scott and Robert Schallert or any two of them, and if otherwise made, shall release all the parties of the first part herein from their obligation herein as to such notes or bills thus renewed or extended. And all the undersigned stockholders hereby appoint the said Mac Word, Jno. R. Scott and Robert Schallert a·, their agents for the purposes above stated, and hereby severally ratify all their acts fo/ said purposes.

"(d) The parties of the second part herein bind and obligate themselves jointly and severally to use all due diligence for the purpose of making collection of all bills receivable of the Citizens' State Bank of Alice, Jim Wells county, Texas, after the parties of the second part herein have received said ·stock.

"(e) It is expressly agreed by and between the parties to this contract that nothing herein shall be construed to bind any stockholder for any loss in any note or bill receivable of the Citizens' State Bank of Alice, Texas, to either the said bank or the parties of the second part herein for any sum other than that which such stockholder would have to pay in order to prorate, discharge and pay off said bill or note if said bill or note should be owned by any other person or what such stockholder would lose if said note should be charged off the books of said bank.

"Witness our hands this the 10th day of May, A. D. 1915. Jno. R. Scott, Robert Schallert, C. H. Wood, J. T. Graham, John T. Wright, Mac Word. M. A. Forbes, and Ross Peters, Parties of First Part, and Stockholders of Citizens' State Bank of Alice, Texas. O. E. Cannon, D. G. Wood; Parties of Second Part."

It is claimed that under the direction and orders of the bank, and by direction of the bank directors, some 11 notes, aggregating $8,119.65, were charged off, on the 4th day of November, 1915, and placed in escrow for collection. The loss to the stock on 190 shares sold to appellee and others, after those notes were charged off, amounted to $840, or $24 on each share of stock. Appellee and others bought .30 shares from appellant ; hence the total loss on the 30 shares is claimed to aggregate $720, for which appellee sues.

Appellant answered by general and special exceptions and the plea of the statute of limitations of four years, general denial, and special answers.

·The case was tried by the court with a jury, who returned a verdict in favor of ap-

pellee, and thereupon the court entered its judgment for appellee in the sum of $651.43, with interest at the rate of 6 per cent. from its date.

The first error assigned and urged is that the cause of action was barred by the statute of limitations of 4 years and the refusal of the court to give appellant's requested charge directing a verdict in his favor on the ground the claim was barred by the statute of limitations of four years. If that issue be determined affirmatively, it would not be necessary to proceed further with a discussion to determine any other issue. The undisputed facts are that the contract set out, dated May 10, 1915, guaranteed the—

"payment within four years all bills receivable owned by the Citizens' State Bank of Alice at the time of the consummation of the sale and purchase of the stock contracted for sale and delivery and this day deposited in escrow in said Bank by the parties of the first part, to the said Citizens' State Bank of Alice," etc., and further to pay "O. E. Cannon, A. Wayne Wood and D. G. Wood and others that purchase said stock this day deposited in escrow immediately their interest in all notes charged off under the direction of the State Bank Examiner."

On the 30th day of October, 1915, the directors charged off the notes in question, amounting to the aggregate of $8,119.65. Subsequently, 4 days afterwards, it is shown by the testimony of O. E. Cannon that the Bank Examiner for the state ordered the officers of the bank to charge off and take out of the assets of the bank the identical notes in controversy mentioned. In this connection it is shown there was no written instruction to do so, and no record is made of such direction.

On the 6th day of November, 1915, O. E. Cannon, as cashier of the bank, wrote appellant, advising he had drawn on him for $720 as his proportionate share of loss out of the 30 shares of stock he and others brought from him at $24 per share, and that under the terms of the contract the money was due. Appellant then and always thereafter refused to pay the money. No suit was brought upon the contract or upon his refusal to pay until more than 4 years thereafter.

[1] It makes no difference whether we treat this as a joint and several obligation to pay money in which all the makers are principals or it guarantees the pro rata loss of the stock to the bank that the stockholders were required to have charged off, and placed in escrow for collection to reimburse the stockholders to such obligations, the statute of 4-year limitation is applicable. More than 4 years have passed after the notes were charged off, and more than 4 years have passed since appellant refused to pay the draft drawn on him for the agreed amount of the assessment of $24, and the cause of action on the contract is barred. Articles 5688–5690, R. S.; Bateman v. Ward (Tex. Civ. App.) 93 S. W. 509.

[2] We see nothing in the express agreement of the parties in writing or any other fact that takes it out of the bar. It is contended by appellant that no cause of action arose until the period of 4 years had elapsed on May 10, 1919, claiming practically a 10-year agreement in which to bring the suit. Where an allegation expresses a due date as of 4 years, say, after a fixed date for its maturity, that contention would be true, but such is not the obligation here, and the statute of limitations must be strictly construed.

[3] It is urged by appellees:

"Because appellant refused to pay the assessment, plaintiffs themselves were compelled to pay in such money, and, having so paid, then they became subrogated to the rights of the bank as against appellant Forbes on his general warranty that all such notes should be paid within 4 years."

If appellee places his right to defeat the limitation by the subrogation theory upon the ground that they have been compelled to pay the debt of their joint obligors, and therefore may demand subrogation on an implied promise for reimbursement growing out of the relation of the parties, it would then be barred in 2 years. Yndo v. Rivas (Tex. Civ. App.) 142 S. W. 921. So, of course, if paid for him on an express promise in writing, instead of an implied promise, it would still be barred under the 4-year statute of limitations.

Whether, as appellee urges, this is, on the part of appellant, an effort to defeat an honest debt, still it must be admitted he had such interest in the charged-off notes as to demand the greatest diligence and most economical administration of the trust that could be used to secure out of the collection of the notes the best results to reduce his obligation. At any rate he then and there repudiated the contract, giving his reasons therefor, and the limitation was put in motion, both by the language of the contract itself, as well as by his action, and appellees had the right to bring this suit immediately.

It is not necessary to discuss whether the bank might alone have brought the suit, or that the law of limitations would have different application, it did not do so, and upon the face of the record before us we are compelled to hold that the trial court erred in not sustaining the plea and directing the jury to so find.

The judgment of the trial court is reversed, and here rendered for appellant on his plea of limitations.